**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH CHODNICKI,** | : | **No. 3:07cv1112** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| | : | |
| **v.** | : | |
| | : | |
| **OLD FORGE BANK,** | : | |
| **Defendant** | : | |

## MEMORANDUM

Before the court is defendant's motion for summary judgment (Doc. 31).

Having been fully briefed and argued, the case is ripe for disposition.

**Background**

Plaintiff Joseph Chodnicki was employed as a branch manager at the

Defendant Bank's Duryea branch.  (Defendant's Statement of Facts (Doc. 38)

(hereinafter "Defendant's Statement) at ¶).[1]  He worked there from December 1996

until March 2006.  (Id.).  Plaintiff had previously worked for PNC Bank at the same

location.  (Id. at ¶ 4).  Defendant purchased its Duryea Branch from PNC.  (Id.).

According to the defendant, after purchasing the Duryea branch, Old Forge

came to the conclusion that the staff needed to be reduced for the bank to meet

rising costs and decreasing revenue.  (Id. at ¶ 5).  The plaintiff and another employer

were those whose jobs were to be eliminated.  (Id.).  Defendant claims that it

---

[1]The court will cite to the defendant's statement for facts about which there is no dispute.  Where there is a dispute, the court will note that.

concluded that the two highest hourly salaries should be eliminated to cut costs.  (Id. at ¶ 6).  Defendant terminated plaintiff's employment on March 15, 2006.  (Id. at ¶ 7). At the time of his firing, plaintiff was 58 years old.  (Id. at ¶ 8).  The plaintiff disputes that a desire to cut costs motivated plaintiff's firing, but instead alleges that defendant discriminated against the plaintiff because of his age and disability. (Plaintiff's Counterstatement of Material Facts (Doc. 40) (hereinafter "Plaintiff's Statement") at ¶¶ 5-6).

At the time of plaintiff's termination, Judith Martinelli, who eventually replaced plaintiff, had been working for defendant since 1996.  (Defendant's Statement at ¶ 9).  She had been employed by the bank's predecessor in interest since 1978.  (Id. at ¶ 10).  She was 49 years old.  (Id. at ¶ 14).  Plaintiff had been her supervisor the entire time she worked for the bank.   (Id. at ¶ 11).  In March 2006, Martinelli served as head teller in the bank.  (I.d at ¶ 12).  She continued to work under that title for several months following plaintiff's termination, though the parties dispute when she was hired to replace plaintiff.   (Id. at ¶ 13; Plaintiff's Statement at ¶ 13).  According to the defendant, while Martinelli assumed some management duties, two male employees, Michael Jake and Richard Casagrande, assumed many branch manager duties during the initial months after plaintiff's termination.  (Defendant's Statement at ¶ 15).  Jake was 53 years old.  (Id. at ¶ 20).  Defendant asserts that Martinelli assumed plaintiff's duties "several months" after his termination, when defendant determined that Mr. Casagrande could not cover both his previous position and the

additional duties assigned him from plaintiff's previous job.  (Id. at ¶ 16).  Plaintiff

insists that the determination to promote Martinelli had been made months earlier,

and that evidence indicates that the delay between plaintiff's termination and formal

notice that Martinelli had been promoted was a "probationary period" designed to

establish that Martinelli could perform the job.  (Id. at ¶¶ 15-16).

Plaintiff had heart problems during his employment with defendant.  (Id. at ¶

21).   At the time he was hired, plaintiff had previously suffered a heart attack and

had surgery for a heart condition.  (Id.).  In July 1998, plaintiff missed work because

of a heart attack and angioplasty.   (Id. at ¶ 22).  Plaintiff also missed work in

November and December 2001 due to a heart attack.  (Id. at ¶ 23).  He missed one

day of work in 2004 and four days in 2005.  (Id. at ¶ 24).  He never told anyone at

work that he had a condition that limited his ability to work, and never sought

accommodation for a disability.  (Id. at ¶ 25).

When plaintiff filed an initial disability discrimination questionnaire, he admitted

that his alleged disability did not affect his ability to do his job.  (Id. at ¶ 28).  Plaintiff

contends that he made that admission because his condition was stable at the time.

(Plaintiff's Statement at ¶ 28).   He also stated on the questionnaire that he had "no

limitations or restrictions" on his ability to do work and could perform all of the major

functions of his job without accommodations.  (Id. at ¶ 29).  He also admitted that his

employer had not perceived him as disabled and did not mistreat him because of his

disability.   (Id. at ¶¶ 30-1).  Plaintiff does contend, however, that a supervisor made

disparaging comments about the bank's aging workforce and the rising cost of providing that workforce with health care. (Plaintiff's Statement at ¶ 27).   The supervisor "chided" plaintiff about his weight. (Id.).  In his initial filing, plaintiff claimed only that he was restricted in the major life activity of lifting, though the intake worker noted that he had problems with his hands and difficulty writing. (Id. at ¶ 32; Plaintiff's Statement at ¶ 33).  Plaintiff contends that he suffers from arthritis which makes use of his hands and knees difficult. (See Plaintiff's Affidavit in Opposition to Defendant's Motion for Summary Judgment, Exh. 8 to Plaintiff's Statement (Doc. 40-9) at ¶ 11).  Plaintiff later filed a claim for Social Security Disability insurance, stating that he had been unable to work because of his illness beginning on March 15, 2006. (Id. at ¶ 37).

Plaintiff filed his complaint in this court on June 21, 2007.  The complaint consists of two counts.  Count One alleges age discrimination pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621.  Plaintiff contends that he was fired on account of his age, 58, and replaced by a significantly younger worker who had much less experience.  Count Two alleges disability discrimination pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101.  Plaintiff alleges that he was disabled within the meaning of the Act, was qualified to perform his job, and was terminated by the defendant because of a perception about his disability.

The parties engaged in discovery.  At the close of discovery, defendant filed the instant motion for summary judgment.  The parties then briefed the issue and the

4

court heard argument, bringing the case to its present posture.

**Jurisdiction**

Because this case is brought pursuant to the Age Discrimination in

Employment Act, 29 U.S.C. §§ 621, *et seq*, and the Americans with Disabilities Act,

42 U.S.C. §§ 12101, *et seq.*, the court has jurisdiction pursuant to 28 U.S.C. § 1331

("The district courts shall have original jurisdiction of all civil actions arising under the

Constitution, laws or treaties of the United States.").

**Legal Standard**

Granting summary judgment is proper if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that the moving party is

entitled to judgment as a matter of law.  See Knabe v. Boury, 114 F.3d 407, 410 n.4

(3d Cir. 1997) (citing FED. R. CIV. P. 56(c)). "[T]his standard provides that the mere

existence of some alleged factual dispute between the parties will not defeat an

otherwise properly supported motion for summary judgment; the requirement is that

there be no genuine issue of material fact."  Anderson v. Liberty Lobby, Inc., 477

U.S. 242, 247-48 (1986) (emphasis in original).

In considering a motion for summary judgment, the court must examine the

facts in the light most favorable to the party opposing the motion.  International Raw

Materials, Ltd. v. Stauffer Chemical Co., 898 F.2d 946, 949 (3d Cir. 1990). The

burden is on the moving party to demonstrate that the evidence is such that a

5

reasonable jury could not return a verdict for the non-moving party.  Anderson, 477

U.S. at 248 (1986).  A fact is material when it might affect the outcome of the suit

under the governing law.  Id.  Where the non-moving party will bear the burden of

proof at trial, the party moving for summary judgment may meet its burden by

showing that the evidentiary materials of record, if reduced to admissible evidence,

would be insufficient to carry the non-movant's burden of proof at trial.  Celotex v.

Catrett, 477 U.S. 317, 322 (1986).  Once the moving party satisfies its burden, the

burden shifts to the nonmoving party, who must go beyond its pleadings, and

designate specific facts by the use of affidavits, depositions, admissions, or answers

to interrogatories showing that there is a genuine issue for trial.  Id. at 324.

**Discussion**

Defendant seeks summary judgment on each of plaintiff's claims.  The court

will address them in turn.

**A.  Age Discrimination in Employment Act**

The Age Discrimination in Employment Act (ADEA) prohibits "discrimination

against an individual over age 40 with respect to 'compensation, terms, conditions,

or privileges of employment, because of an individual's age.'" Billet v. Cigna Corp.,

940 F.2d 812, 816 (3d Cir. 1991) (quoting 29 U.S.C. § 623(a)).  To recover under the

act, "'a plaintiff must prove by a preponderance of the evidence that age was the

determinative factor in the employer's decision' at issue." Id.  (quoting Bartek v.

Urban Redevelopment Authority of Pittsburgh, 882 F.2d 739, 742 (3d Cir. 1989)).

6

Lacking direct evidence of discrimination, a plaintiff seeking recovery under the ADEA must first make out a prima facie case by "showing (1) he is within the protected age class, i.e. over forty; (2) that he was qualified for the position at issue; (3) he was dismissed despite being qualified; and (4) he was replaced by a person sufficiently younger to permit an inference of age discrimination." Armruster v. Unisys Corp., 32 F.3d 768 (3d Cir. 1994).  Once the plaintiff establishes this prima facie case, "the defendant has the burden of producing evidence that it had 'a legitimate, nondiscriminatory reason for the discharge.'" Fakete v. Aetna, Inc., 308 F.3d 335, 338 (3d Cir. 2002).  If the defendant produces such evidence, the burden shifts back to the plaintiff, who must provide "evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons[,] or (2) believe that an invidious discrimiantory reason was more likely than not a motivating or determinative cause of the employer's action.'" Id. (quoting Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994).

Initially, the court finds that no direct evidence of age discrimination exists. While some of defendant's employees may have made comments about the age of the workforce, those comments were attenuated from the actual employment discrimination and not aimed specifically at the plaintiff.  As such, the case must proceed through the burden-shifting process described above.

**i.  Prima Facie Case**

7

Plaintiff must first make out a prima facie case for age discrimination.  The defendant first argues that plaintiff should be judicially estopped from asserting claims under the ADEA because he applied for Social Security Disability Insurance (SSDI) benefits, asserting that he was not capable of working.  Were the court to adopt this reasoning, plaintiff could not make out a prima facie case, as he would have admitted that he was not qualified to perform his work as a branch manager.  In Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999), the United States Supreme Court addressed the question of whether a plaintiff who had sought SSDI benefits, alleging total disability, should be judicially estopped from later claiming discrimination under the Americans With Disabilities Act (ADA).  As the court noted, a claim to both protection of the ADA, which requires a plaintiff to show that "with reasonable accommodation, she could perform the essential functions of her job," and SSDI benefits, which requires a claimant to lack the ability to perform any relevant work, would appear to be contradictory.  Cleveland, 526 U.S. at 802.  The Court concluded, however, that there were "many situations in which an SSDI claim and an ADA claim can comfortably exist side by side.'  Id. at 803.  Because of the specialized nature of the inquiry under each statute, "an individual might qualify for SSDI under the S[ocial] S[ecurity] A[dministration]'s rules and yet, due to special individual circumstances, remain capable of 'perform[ing] the essential functions' of her job."  Id. at 804.  Still, because an ADA plaintiff must prove that she can perform the essential functions of her job with or without reasonable accommodations, and a

8

claim of being "unable to work" would seem "to negate an essential element of her ADA case," she "cannot simply ignore the apparent contradiction that arises out of the earlier SSDI total disability claim.  Rather, she must proffer a sufficient explanation."  Id. at 806.  In the summary judgment context, "that explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good-faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of her job, with or without reasonable accommodation."  Id. at 807.

The Third Circuit Court of Appeals has concluded that the analysis articulated in Cleveland applies equally to ADEA cases, and thus  "a declaration that one is a 'qualified individual' under the ADEA that conflicts with earlier statements made to the SSA is subject to the same analysis, as the reasoning of the court in Cleveland also applies in the context of the ADEA."  Detz v. Greiner Industries, Inc., 346 F.3d 109, 117 (3d Cir. 2003).  The task for the court in such cases, then, is to "determine whether a plaintiff's assertions are genuinely in conflict, and then evaluate that plaintiff's attempt to explain away the inconsistency."  Id. at 118.  Courts must determine whether the two positions are contradictory "on a case-by-case basis, by examining the unique facts presented by [plaintiff's] claim."  Id..

Plaintiff asserts that the court does not need to undertake this analysis, since the SSA has not yet ruled on his SSDI application.  He points out that in Cleveland, the court noted that the analysis should be different when the plaintiff's SSDI claim

9

has not yet been evaluated, since "any inconsistency in the theory of the claims is of the sort normally tolerated by our legal system." <u>Cleveland</u>, 526 U.S. at 805.  Court rules "recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to 'set forth two or more statements of a claim or defense alternately or hypothetically' and to 'state as may separate claims or defenses as the party has regardless of consistency.'" <u>Id.</u> (quoting FED. R. CIV. P. 8(E)(2)).  Plaintiff's court case and his SSDI petition, which has yet to be ruled upon, simply take alternative positions, he argues.  The court agrees.[2]  The evidence indicates that plaintiff's SSDI claim is still pending, and the court will therefore decline to apply judicial estoppel to prevent plaintiff from asserting in this court that he is entitled to ADEA benefits.[3]

Defendant contends that even if the court concludes that plaintiff is not judicially estopped from claiming to be qualified to perform his job, he has not made out a prima facie case that he was replaced by an employee sufficiently younger to allow an inference of age discrimination.  Defendant points out that plaintiff was 58

---

[2]The same reasoning applies to plaintiff's ADA claims.

[3]In any case, the court finds that the plaintiff's contentions in claiming disability in his SSDI filing and asserting that he was qualified to perform his current job are not inconsistent.  In his SSDI filing, plaintiff asserted that he became unable to work on the day he lost his job.  In his brief, plaintiff explains that his claim of inability to work came because he did not feel capable, given his health conditions, of finding a *new* job after losing his job.  Employers, he asserts, would be unlikely to make a new hire of someone of his age with his history of heart problems.  He did not claim, however, that he had been unable to perform the work he had been doing.  Thus the claim that he had been able to work, but now found himself unable to find a job is not inconsistent.  Plaintiff's explanation of his two filings is adequate, and the court will not grant summary judgment on this point.

years old when he was terminated.   His position, defendant argues, was initially divided up between Michael Jake and Judith Martinelli.  Michael Jake was 53 years old when plaintiff lost his job, and Martinelli was 49.  Defendant argues that both these persons are within the protected class of the ADEA, and they are not so much younger than plaintiff that an inference of age discrimination can apply.

"A plaintiff under the ADEA need not show that the successful candidate was someone who was not in the protected class, i.e. below age forty."  Barber v. CSX Distribution Services, 68 F.3d 694,699 (3d Cir. 1995).  That plaintiff must simply show "that the beneficiary of the alleged discrimination is 'sufficiently younger' to permit an inference of age discrimination."  Id.  The Third Circuit Court of Appeals has found that a five-year age difference can be sufficient to create an inference of discrimination, but that a one year difference cannot.  Showalter v. University of Pittsburgh Medical Center, 190 F.3d 231, 236 (3d Cir. 1999); Sempier, 45 F.3d at 729-30.[4]

Here, the plaintiff has presented evidence that the two people who effectively replaced him were 53 and 49 years old.  Plaintiff was 58 when he lost his job.  At minimum, then, plaintiff was five years older than those who replaced him, and the

---

[4]The court notes that the prima facie case is part of a burden-shifting test; providing evidence to meet the first part of the test does not answer the entire question for summary judgment in a discrimination case.  Proving that an inference of discrimination lies, after, merely serves to "shift the burden of production to the defendants and require them to articulate a legitimate, nondiscriminatory motivation for their failure to promote."  Barber, 68 F.3d at 699

person who ultimately replaced him was nine years younger.  In a context where the defendant had articulated, as explained more fully below, a desire to replace older, higher-priced employees, particularly those with health concerns, the court finds that a reasonable juror could conclude that an inference of age discrimination is appropriate.  The court finds that plaintiff has made out a prima facie case of age discrimination, and the burden now shifts to the defendant to articulate legitimate non-discriminatory reasons for its decision to fire the plaintiff.

### ii.  Legitimate Non-Discriminatory Reason for Firing

Defendant argues that it had a legitimate, non-discriminatory reason for the adverse employment action.  The defendant had determined that cost-cutting was necessary, and therefore decided to downsize the Duryea Branch and let plaintiff go.  Plaintiff agrees that this represents a legitimate non-discriminatory reason for the firing.  The burden thus shifts back to the plaintiff to present evidence that this stated reason for the employment decision was not the real reason.

### iii.  Evidence of Pretext

Defendant argues that plaintiff has offered no evidence by which a factfinder could disbelieve these legitimate, non-discriminatory reasons.  At his deposition, defendant points out, plaintiff explained his evidence of pretext by pointing out that the person who replaced him–Martinelli–looked and acted younger than he was.  (Deposition of Joseph Chodnicki, Exh. 1 to Plaintiff's Statement (Doc. 40-2) (hereinafter "Chodnicki Dep.") at 16-17, 24).  He asserted that "that would be the

only reason, one of the reasons why I feel as though I was discriminated against."

(Id. at 24-25).  He later admitted that he had no other proof of discrimination. (Id. at

25).

Despite plaintiff's admissions in his deposition, other evidence exists by which

a jury could decide that defendant's stated reasons for firing him were not its real

reasons.  The defendant bank's controller, Michael Jake, testified that the advanced

ages of the bank's staff led to higher health-care costs and created a sense that

expenses needed to be cut.  (Deposition of Michael Jake, Exh. 2 to Plaintiff's

Statement (Doc. 40-3) (hereinafter "Jake Dep.") at 15).    When the defendant

decided to eliminate employees in these "cost-saving" efforts, it fired the two oldest

branch employees.  (Id. at 64).   A dispute exists over whether defendant always

intended to replace defendant with Martinelli, or whether circumstances forced a

change in its initial plans.  (See Id. at 33-40).  Moreover, after promoting Martinelli,

defendant transferred Linda Rowan into the branch to replace her, casting doubt on

claims that the company sought to eliminate positions.  (Id. at 54).  Evidence also

indicates that a jury could find that the cost-cutting and salary trimming that

defendant claims to have undertaken did not materialize in any appreciable

way–only one job appeared to have been eliminated, and that was a part-time one

and the salary paid to plaintiff's replacement would soon match his.[5]  (See Id. at 68-

---

[5]At oral argument, the parties disagreed over the defendant's actions should be termed a "downsizing" or "cost cutting."  Such disputes are best left for a jury to decide. Defendant also uses a motion in limine to challenge the qualifications of plaintiff's expert,

72).   A representative of the bank's board also testified that the board never

engaged in any examination of the specific savings and economics of the

downsizing plan that cost plaintiff his job.  (Deposition of Mark H. DeStefano, Exh. 5

to Plaintiff's Statement (Doc. 40-6) (hereinafter "DeStefano Dep.") at 24).  A jury

could therefore conclude that defendant's interest was not in paring down staff, but

in getting rid of an older worker, namely plaintiff.   Based on this evidence, the court

finds that a reasonable juror could "disbelieve the employer's articulated legitimate

reasons" for the employment decision and conclude that discrimination motivated the

defendant's action.  Fuentes, 32 F.3d at 764.  Since the evidence in this case is not

confined to plaintiff's deposition testimony, and that evidence could lead a jury to

conclude that defendant's legitimate non-discriminatory reasons for its hiring

decision were pretext, the court will deny summary judgment on this claim.

## B.  Americans with Disabilities Act

Under the Americans with Disabilities Act (ADA), an employer cannot

discriminate against a qualified individual with a disability because of her disability in

regard to her employment.  42 U.S.C.A. § 12112 (a). Further, an employer must

make reasonable accommodations to known physical or mental limitations of an

otherwise qualified employee with a disability unless such employer can

---

who contends that defendant's personnel changes did not have the impact it sought.  The
court finds that motion premature, and concludes that–even excluding any evidence from
the expert–plaintiff has presented evidence sufficient to survive summary judgment that
defendant's stated motives for the hiring decision were not the real motives.

14

demonstrate the accommodation would impose an undue hardship on the operation of the employer's business.   Id.  See Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999) (holding that "[d]iscrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities.").

The plaintiff has the initial burden of establishing a *prima facie* case in an ADA matter.  Olson v. General Elec. Astrospace, 101 F.3d 947, 951 (3d Cir. 1996); Newman v. GHS Osteopahtic, Inc., 60 F.3d 153, 157 (3d Cir. 1995).  A *prima facie* case is established by the plaintiff when she demonstrates: 1) she is a disabled person within the meaning of the ADA; 2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and 3) she has suffered an otherwise adverse employment decision as a result of discrimination.  Shiring v. Runyon, 90 F.3d 827, 831 (3d Cir. 1996);   Gaul v. Lucent Technologies, 134 F.3d 576, 580 (3d Cir. 1998).

If the plaintiff meets this initial burden, the court then applies the next step in "the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-805." Abramson v. William Patterson College, 260 F.3d 265, 281 (3d Cir. 2001).  The employer must "proffer a legitimate, non-discriminatory reason for the adverse employment decision."  Id. at 282.  An employer need only introduce "evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision."  Fuentes, 32

15

F.3d at 763.  "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff."  Id. (emphasis in original).  Once the employer meets this burden, the plaintiff must show that a jury  "could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating factor or determinative cause of the employer's action." Id. at 764.

### I. Prima Facie Case

Defendant argues that plaintiff cannot make out a prima facie case because he has stated that he could not perform the functions of the job and thus was not a qualified person with a disability.   Plaintiff has offered no evidence that he was disabled within the statute's meaning.  He has no evidence that he was substantially limited in any major life activity, or that any record of disability exists.

The ADA establishes that "[t]he term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."  42 U.S.C. § 12111(8).  The statute further defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).  Major life

activities, left undefined by the statute, have been defined by the Equal Employment

Opportunity Commission as "'functions such as caring for oneself, performing

manual tasks, walking, seeing, hearing , speaking, breathing, learning, and

working.'" Tice v. Centre Area Trans. Auth., 247 F.3d 506, 512 (3d Cir. 2001)

(quoting 29 C.F.R. § 1630(2)(i)).

### i. Actual Disability

At oral argument, plaintiff contended that he suffered from a disability related

to his heart condition.  He contended that poor circulation caused him problems with

his feet and led him to walk with a limp.  Plaintiff contends that these difficulties

constitute a substantial limitation on the major life activity of walking.  When a

plaintiff claims a substantial limitation on a major life activity such as walking as his

disability, the question of "whether a person has a disability under the ADA is an

individualized inquiry."  Sutton v. United Air Lines, 527 U.S. 471, 483 (1999).  The

Third Circuit Court of Appeals has noted that "EEOC regulations provide that an

individual is 'substantially limited' in performing a major life activity if the individual is

(i) Unable to perform a major life activity that the average person in the general

population can perform; or (ii) Significantly restricted as to the condition, manner or

duration under which an individual can perform a particular major life activity as

compared to the condition, manner, or duration under which the average person in

the general population can perform that same major life activity."  Williams v.

Philadelphia Housing Authority Police Dept., 380 F.3d 751, 762 (3d Cir. 2004)

(quoting 29 C.F.R. § 1630.2(j)(1)).  Courts consider "[S]everal factors . . . in evaluating whether an individual is substantially limited in a major life activity: '(i) The nature and severity of the impairment; (ii) The duration or expected duration of the impairment; and (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.'" Id. (quoting 29 C.F.R. § 1630.2(j)(2)).  In the Third Circuit, this inquiry consists of a two step process: "First, the court determines whether the individual is substantially limited in any major life activity other than working, such as walking, seeing or hearing."  Mondzlelewski v. Pathmark Stores, Inc., 162 F.3d 778, 783 (3d Cir. 1998).  If the individual is not limited in that way, "the court's next step is to determine whether the individual is substantially limited in the major life activity of working."  Id. at 784.

Here, the plaintiff contends that his heart condition has harmed his circulation and caused him to walk with a limp.  Plaintiff filed an affidavit where he claimed to have pain in his hands and knees from arthritis.  (Plaintiff's Affidavit at ¶ 11).  As evidence of this condition, he pointed to a report from his podiatrist, Dr. Joseph J. Costello, which related that plaintiff "has foot pathology related to decreased vascular perfusion as a result of his heart disease.  He is suffering form onychomycosis[6] which is painful and limits his ability to ambulate without pain."  (See Report of Dr. Joseph J. Costello, Exh. A to Defendant's Brief in Support of Motion in

---

[6]"Very common fungus infections of the nails, causing thickening, roughness, and splitting."  STEDMAN'S MEDICAL DICTIONARY, 28th Ed. (2006).

Limine to Exclude Dr. Costello's Report (Doc. 33) (hereinafter "Costello Report")).  At

his deposition, Dr. Costello related that his diagnosis meant that plaintiff's condition

"limits his walking."  (Deposition of Dr. Costello, Exh. C to Motion in Limine to

Exclude Dr. Costello's Expert Report (Doc. 29-3) (hereinafter "Costello Dep.") at 21).

When plaintiff's were "not trimmed, when they get thicker because of the fungus,

they become painful when they rub his shoes, so it makes it difficult for him to walk."

(Id.).  The condition led to pain in plaintiff's feet and "a limp.  It does cause him to

walk more slowly so that the nails don't bump into the front of his shoe."  (Id.).

Plaintiff had walked with this limp for as long as the doctor could recall.  (Id. at 22).

The doctor assessed plaintiff with an "antalgic gait," which meant that "[h]e just

doesn't walk straight.  You can tell that when he places his foot and picks his foot up

that he's trying not to allow that foot to slide because it would cause pain."  (Id. at

25).  Later, however, the doctor described that condition as "pain when [plaintiff]

walks."  (Id. at 45).  Though plaintiff also demonstrated "a little bit" of reduced muscle

strength, the condition was to be expected for someone of plaintiff's age and medical

condition."  (Id.).  Dr. Costello diagnosed the condition as "chronic and permanent."

(Id. at 26).

        The court finds that no evidence exists to establish that plaintiff's foot and toe

problems caused significant restrictions on his ability to walk, though they did cause

a limp.  Plaintiff does not use a cane, does not complain of an inability to walk up

stairs, and is not required to use a wheelchair or other device to move from place to

19

place.  The evidence establishes only that he has pain when he walks, moves a bit

more slowly than those without his condition, and has a noticeable limp.  Indeed,

when plaintiff filled out an intake questionnaire completed in relation to his

administrative ADA claim, however, he did not complain of any significant limitations

in walking, but listed only lifting as a limitation.  The plaintiff has thus not produced

evidence that he suffered from a substantial limitation on a major life activity.  In

addition, plaintiff does not contend that his health substantially limited his ability to

work at the time he lost his job, and he therefore cannot claim a substantial limitation

on the major life activity of working.

       This case is like <u>Kelly v. Drexel University</u>, 94 F.3d 102 (3d Cir. 1996).  In that

case, the plaintiff fractured his hip and was left with a noticeable limp.  <u>Id.</u> at 104.  A

specialist diagnosed him with "severe post-traumatic degenerative joint disease of

the right hip and protrusio acetabulum of the right hip joint."  <u>Id.</u>  Six years later,

defendant eliminated plaintiff's position.  <u>Id.</u>  Plaintiff sued, alleging disability

discrimination.  <u>Id.</u>  The Third Circuit Court found that, since plaintiff admitted he was

able to walk, "the question presented is whether he adduced sufficient evidence from

which a factfinder reasonably could conclude that the nature and severity of his

injury significantly restricted his ability to walk as compared with an average person

in the general population."  <u>Id.</u> at 105.  The plaintiff in <u>Kelly</u> reported that he could not

walk more than a mile, and the could not jog at all.  <u>Id.</u> at 106.  He could climb stairs,

but had to pace himself slowly and hold onto the railing.  <u>Id.</u>  Though his doctor

reported that he had "great difficulty in walking around," the plaintiff offered no evidence that "he required any special devices like a cane or crutches to aid him in walking." Id. The court upheld the district court's finding that "'as a matter of law . . . [plaintiff's] trouble climbing stairs, which requires him to move slowly and hold the handrail, does not substantially limit his ability to walk." Id. Here, the plaintiff had fewer limitations on his ability to walk than Kelly. Evidence exists that plaintiff has some degree of pain when he walks, but no difficulty in climbing stairs. Given this holding, the court finds that as a matter of law plaintiff cannot establish that he was disabled within the first part of the ADA's definition.

### ii. Regarded as Disabled

Of course, the plaintiff could also establish that he is covered by the act if he could show that his employer regarded him as disabled. At oral argument, the defendant contended that plaintiff's only allegation in his complaint was that his employer regarded him as disabled. Plaintiff has apparently abandoned that allegation, however, as he does not argue in his brief that his employer considered him to be disabled. Because plaintiff does not contend that he was regarded as disabled, the court finds that he is not protected by the statute on these grounds.[7]

---

[7]In any case, the evidence indicates only that the employer knew of plaintiff's heart condition and had made comments about his weight. Plaintiff does not claim that these conditions–by themselves–constitute a disability, and therefore cannot contend that the employer regarded him as disabled because it knew of these conditions. Plaintiff's main contention is that he feared the employer would discriminate against him in the future because of his health conditions. This is a speculative claim and not covered by the act.

### iii.  Record of Disability

A plaintiff can also establish that he is covered by the statute if he demonstrates that he has a record of a disability.  Plaintiff contends that he has such a record, pointing to medical and attendance records.  Federal regulations describe a person with a record of a disability as one who "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities."  29 C.F.R. § 1630.2(k).  "A plaintiff attempting to prove the existence of a 'record' of disability still must demonstrate that the recorded impairment is a 'disability' within the meaning of the ADA."  Tice v. Centre Area Trasp. Authority, 247 F.3d 506, 513 (3d Cir. 2001); see also Howell v. Sam's Club No. 8160/Wal-Mart, 959 F.Supp. 260, 268 (E.D. Pa. 1997) (finding that "[s]ummary judgment in favor of the employer is appropriate if the employee's record of impairment does not demonstrate a substantial limitation in major life activities."); Buskirk v. Apollo Metals, 116 F.Supp.2d 591, 600 (E.D. Pa. 2000) (holding that "[i]f an impairment does not substantially limit a major life activity, a history of those same impairments cannot constitute a record of impairment."); Sherrod v. American Airlines, Inc., 132 F.3d 1112, 1120-21 (5th Cir. 1998).

One set of records to which plaintiff points, his work attendance records, establish that plaintiff missed ten days of work in November and all of December 2001 due to illness.  (See Defendant's Attendance Record, Exh. I to Plaintiff's Statement (Doc. 38-10)).  Plaintiff also missed two weeks due to illness in July,

1998.  Id. The July 1998 record notes that plaintiff had a heart attack and underwent

angioplasty.  Id.  Such records do not establish that plaintiff suffered from any

condition that substantially limited a major life activity.  Instead, they simply record

that plaintiff missed several weeks of work due to illness in 1998 and 2001.  Later

records do not indicate that he missed more than a few days at a time.  See Id.

Those records also do not indicate that he was substantially limited in his work; in

the last few years of his employment, plaintiff missed only a few days due to illness.

(Id.).  In any case, courts have concluded that records which indicate plaintiff missed

work for a period of time due to illness do not establish that plaintiff suffered from a

condition that substantially limited a major life activity.  See, e.g., Taylor v. Nimock's

Oil Co., 214 F.3d 957, 961 (8th Cir. 2000) (finding no record of disability or

misclassification of disability, even though employer knew of plaintiff's heart attack,

sent her a get-well card and note about job duties, since such evidence "supports

the proposition that [defendant] acknowledged that [plaintiff] was suffering medical

problems but expected that she would return to work when she had sufficiently

healed.").

       The other records to which plaintiff points, his medical records, establish that

he had circulatory problems with his feet and suffered from the fungal problem with

his toenails discussed above.  As the court has explained, such a condition does not

amount to a substantial limitation on the major life activity of walking, and the court

finds that no record of disability exists.

Since the plaintiff has not demonstrated that he is a qualified individual with a disability within the meaning of the ADA, he cannot make out a prima facie case under that statute.  The court will therefore grant the defendant's motion for summary judgment on this claim.

**Conclusion**

For the reasons stated above, the court will deny the defendant's motion for summary judgment on plaintiff's ADEA claim but grant the motion on plaintiff's ADA claim.  An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOSEPH CHODNICKI,** | : | **No. 3:07cv1112** |
| **Plaintiff,** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **OLD FORGE BANK,** | : | |
| **Defendant** | : | |

:::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

**ORDER**

**AND NOW**, to wit, this 21st day of January 2009, the defendant's motion for summary judgment (Doc. 37) is hereby **GRANTED** in part and **DENIED** in part, as follows:

1) The motion is **DENIED** with respect to plaintiff's claims pursuant to the Age Discrimination in Employment Act; and

2) The motion is **GRANTED** with respect to plaintiff's claims pursuant to the Americans with Disabilities Act.

Defendant's motions in limine (Docs. 29, 31) are hereby **DENIED** without prejudice to the defendant raising them again at the appropriate time.

**BY THE COURT:**

**s/ James M. Munley**
**JUDGE JAMES M. MUNLEY**
**UNITED STATES DISTRICT COURT**